## ORLANDO DAVIS *v.* F. M. BELL ET AL.

1. CIRCUIT CLERK. *Execution for costs. Notice to debtor. Oppression.*
   A circuit clerk, who is, like other officers, a public trustee, cannot use the powers and opportunities of his position for purposes of oppression or speculation; and his right to issue process for his costs must be exercised with the utmost good faith, after notice to the debtor, if his residence can be found by reasonable diligence.

2. SAME. *Chancery jurisdiction. Constructive trust. Fraud.*
   Such a clerk, who, after a judgment-debtor has paid his costs and promised to pay the others', procures, to strengthen a void tax-title, another officer's claim, and, without notice to the debtor, whose residence and ample personal estate he knows, issues execution, will be held, in equity, the debtor's trustee of the land on which he has it levied, and buys, through an agent, at a sacrifice.

3. SAME. *Chancery pleading. Multifariousness. Full relief. Epidemic.*
  The judgment-debtor can recover in his bill touching the land, additional costs paid under protest and occasioned by the first execution, and the clerk issuing another for a balance of costs not realized at the sale, and endeavoring thereunder to sell other land in a town quarantined against yellow-fever when the debtor is a refugee from the State. *Ezelle* v. *Parker*, 41 Miss. 520, distinguished.

APPEAL from the Chancery Court of Alcorn County.

Hon. L. HAUGHTON, Chancellor.

*Orlando Davis*, the appellant, *pro se.*

A circuit clerk, who, in violation of the statute (Acts 1875, p. 19), had purchased land sold May 10, 1875, for the taxes of 1874, and procured a void deed from the auditor (*Gamble* v. *Witty*, 55 Miss. 26) entered upon a scheme of fraud to obtain a title at execution sale. Availing of his official power to issue a writ, in which he had only the interest which he purchased from a party, who refused to permit its use, he procured the sale of the lots, without the appellant's knowledge, and became himself the purchaser through his agent. Does the bill on its face present such a case of fraud as requires an answer? Our Constitution treats an office as a trust. Const., art. 4, § 17 ; art. 12, § 2. It is so regarded, in adjudications, in other States and in England. *In the matter of Oaths of Attorneys*, 20 Johns. 492 ; *In re Dorsey*, 7 Porter, 293, 371 ; *Ex parte Gist*, 26 Ala. 156 ; *The King* v. *Burrel*, 5 Mod. 431. Like other trustees, the officer is responsible for the lawful use of the power and authority conferred upon him. The measure of fiduciary responsibility is the same, in the view of a court of equity, whether arising from public or private relations. *The Governor* v. *M'Ewen*, 5 Humph. 241, 265 ; *Peck* v. *James*, 3 Head, 75. What that measure is the courts have often decided. If he purchases the trust property with his own money, he cannot retain it, but holds as trustee. 1 Perry on Trusts, § 129. He can, under no circumstances, reap personal benefit from the manner in which he exercises his trust. 1 Story Eq. Jur. § 322. The issuance of an execution presupposes the necessity of coercing payment, and cannot be required where the debtor stands willing and ready to pay without it. *Osgood* v. *Brown*, Freem. Ch. 392. No one but the plaintiff

or his attorney of record can sue out and control an execution. The clerk can issue it, of his own option, only within twenty days after adjournment. Code 1871, § 837. Parol evidence may be received to establish any fact or series of facts tending to show that judicial proceedings have been abused and perverted to an improper use. *Christian* v. *O'Neal*, 46 Miss. 669, 672. Land cannot be levied on if sufficient personal property is found or surrendered. Code 1871, § 842. Such property cannot be found by the officer without search, nor surrendered by the debtor without notice. It was the sheriff's duty to levy on the personal property, and his levy on the land was in violation of law.

*Whitfield & Young*, for the appellees.

1. If Bell had not been clerk, the appellant would not contend that there was any element of fraud in his conduct. As a private person, he could buy the tax-title, and had the right to strengthen it by purchase at the execution sale. The fraud, then, must grow out of some fiduciary relation, supposed to result from the clerkship. His position did not prevent his purchase of the tax-title, nor does the statute (Acts 1875, p. 19) so declare. His only official act was the issuance of an execution, — which was his duty imperatively imposed by statute, and his right, as the assignee and holder of the judgment. If Bell has obtained a legal advantage of Davis, it has resulted solely from the superior diligence of the former and the latter's gross neglect. A judgment debtor must tender payment in order to avoid execution, and cannot expect to be requested to do what the judgment was obtained to enforce. Notice to the debtor that an execution is about to issue is required by no law, and, in practice, would often defeat recovery. The proceedings were regular. Bell does not stand in an odious light. It is impossible to sustain the position that he was a trustee ; but public policy forbids the investigation of his motive for performing an official act.

2. The bill is also multifarious, in that to a bill to remove clouds from title is joined a demand for damages for the improper issuance of the second execution. The alleged fraudulent sale was made under the first writ; the second was for an unsatisfied balance, which, however, Davis paid before sale.

For the damages resulting from the latter writ, the remedy at law is complete and exclusive. *Ezelle* v. *Parker*, 41 Miss. 520. Removal of a cloud from title has no relation to the claim for damages. They are separate causes of action, springing from distinct transactions, and dependent upon different facts.

GEORGE, C. J., delivered the opinion of the court.

The appellant filed his bill in the Chancery Court of Alcorn County against the appellees, in which he charged that on January 24, 1878, a judgment for costs was rendered against the appellant in the Circuit Court of Alcorn County for eleven dollars and fifty cents ; that, on May 13 of same year, he paid to the defendant, Bell, who was then the circuit clerk of said county, the jury-tax of three dollars, and the costs due said Bell, viz., two dollars and fifty cents ; that there was cost due an ex-sheriff of the county, who was a non-resident, and also to an ex-circuit-clerk, Skillman ; that neither of these were present to receive their costs, and that he informed the clerk, Bell, that he would pay these costs as soon as he could find the parties ; that, in a few days thereafter, the said Bell went to said Skillman, to whom three dollars and fifty cents of the remaining six dollars of costs were due, and tried to prevail on him to allow an execution to be issued on said judgment for his costs, and that Skillman refused permission ; and that Bell then bought Skillman's costs, and on the 28th of the same month (May, 1878), Bell issued an execution for said balance of costs, and placed the same in the hands of the sheriff of Alcorn County, and directed him to levy the same on two lots owned by the appellant in the town of Corinth, in said county ; that the sheriff made the levy, and, in July following, sold the lots for five dollars each to said Bell, he making the purchase in the name of his co-defendant, Cunningham, who had no real interest in the purchase, and, in a short time thereafter, conveyed by quit-claim deed said lots to the defendant, Bell. The bill further alleged that the appellant resided in Holly Springs in this State, about sixty-three miles from Corinth; that he visited Corinth only once or twice a year ; and that these facts were known to Bell. It was also charged that the appellant had five thousand dollars worth of personal property in Mar-

shall County, in this State, subject to execution; that he knew nothing of said levy on and sale of said lots until after the sale took place; that Bell purchased said costs of Skillman with the view of getting the right to issue the execution and have the same levied on these said two lots, and buying the same, so that he, Bell, could thereby perfect a void tax-title which he had to them; that he had no authority from the other officers having interest in said costs to issue said execution. It is also alleged in the bill that, notwithstanding only six dollars was due as costs when the execution was issued, and the lots sold for ten dollars, the additional costs accruing by reason of the issue of said execution were such as to make the ten dollars insufficient to pay the costs; and thereupon the defendant, Bell, issued another execution for costs, and had it levied on other lands of the appellant in Alcorn County; that this last execution was issued during the yellow-fever epidemic of 1878, when it was known to Bell that the appellant was not in the State, being a refugee from said epidemic, and when the town of Corinth was under quarantine; but that the appellant ascertained the fact of the levy before sale, and was compelled, owing to the quarantine, to pay seventeen dollars to stop it, and that this payment was made under protest. The prayer of the bill is to have the deed from the sheriff to Cunningham and the deed from Cunningham to Bell declared null and void, and cancelled, and also to recover from Bell all the additional costs which the complainant has been compelled to pay, and which were occasioned by an unauthorized issuance of the executions. The Chancellor sustained a demurrer to the bill, and dismissed it, and hence this appeal.

We think the bill presents a proper case for equitable relief. The appellee was a public officer, and, though he had a right to collect the costs due him, he had no right, under color of making this collection, to use the process of the court for the purpose of speculation for his own benefit or to injure the appellant. The latter had called on him, and paid his costs, and expressed an intention to pay the costs due the others as soon as he could meet them. He knew the appellant's residence and ability to pay, yet, as soon as he was paid, he sought to procure another officer to allow the execution to be

issued for his benefit, and, failing in this, he purchased his costs, and, without the slightest warning or notice to the appellant, issued another execution, and caused it to be specially levied on lots which he wished to acquire. The proceedings thus initiated were consummated in a sale to the clerk, by which he gained a great advantage by securing the lots at a nominal price. Not satisfied with this, at a time of general alarm and suspension of all business, when the appellant, with many others, was a refugee from the State, to escape a deadly epidemic, and when the town in which the sale was to be made was quarantined and all access to it prohibited, he caused another levy to be made, and endeavored to make another sale. Such a transaction cannot be tolerated. An officer's right to collect his costs by execution is a shield to protect him, not a sword to destroy or oppress the debtor. If he issues an execution, and under it purchases, either directly or indirectly, property of the defendant at a sacrifice, as was done in this case, he must be held to be a trustee for the defendant, unless he shows that he has given notice, by mail or otherwise, to the defendant, if he knows or could with reasonable diligence ascertain his residence. He should, in such a case, warn the defendant of the intended issuance of the execution, and of the threatened levy and sale, and thus give him a fair opportunity of preventing a sacrifice of his property.

The right of an officer to issue or execute process for his own benefit, and to collect costs due him, must be exercised with the utmost good faith, and with the view only of collecting his costs ; it cannot be perverted to the gaining of an unfair advantage to the officer, in securing property of the defendant at a great bargain. Public officers are not allowed to use the powers or opportunities of their official position for the purpose of speculation or oppression. They are public trustees, selected for their supposed fitness to discharge public duties. Their fees and salaries are intended as a full compensation for the discharge of these duties ; their right to them does not in any just sense convert their offices into private property. It would be a reproach to a constitutional government, if such officers were permitted to abuse the opportunities of official position or the powers conferred on them by law, to the enrichment of them-

selves at the expense of the public, whose servants they are, or to the detriment of any citizen.

We think, also, that so much of the appellant's bill as seeks to recover the additional costs, incurred by the wrongful issue and levy of the executions, and paid by him under protest, is maintainable. The costs grew out of the same transaction, which we have condemned on the facts stated in the bill. It is essential to full and complete relief that the court should take jurisdiction of this also. In the case of *Ezelle* v. *Parker*, 41 Miss. 520, the High Court of Errors and Appeals declined to give a decree for rents and possession of the land, when the bill was filed, by a complainant not in possession, to cancel a deed. We adhere to that decision. But it will be noted that in that case the complainant's remedy, as to all the matters embraced in the bill, was ample and unembarrassed at law. The deed of the wife sought to be cancelled was void for want of the joint execution of the husband, as required by statute. In such a case, the complainant, not being in possession, and therefore entitled to bring his action of ejectment, coming into equity under the statute to cancel a void deed, will be entitled to no other relief than the cancellation.

*Decree reversed, demurrer overruled, and cause remanded.*