## E. J. HALL v. D. W. MOORE.

1. WITNESS FEES. *Execution therefor.* *Unsuccessful party.* *Code* 1880, § 1595.

   Section 1595, code 1880, provides that a party recovering costs may file the certificates of his witnesses, the fees of whom he has paid, and have the same included in an execution for costs. This does not apply to the fees of witnesses for an unsuccessful party. They have merely a claim against him, enforcible by suit.

2. COSTS. *Execution for.* *Improper use of process.* *Vacating sale.*

   One at whose instance an execution for costs is issued, having, by agreement with the officers of court, control of the execution, stands, as the officers would, in the attitude of a public trustee, and cannot use the process for oppression or speculation. He must proceed with good faith, and after notice to the debtor if his residence can be ascertained by reasonable diligence. If he disregards this, and buys under the execution property of the debtor without his knowledge, and at a sacrifice, equity will vacate the sale. *Davis* v. *Bell*, 57 Miss., 320.

FROM the chancery court of Holmes county.

HON. T. B. GRAHAM, Chancellor.

Under an execution for costs, issued on the judgment against appellant mentioned in the opinion of the court, the land in controversy was sold to the appellee, Moore, who brought ejectment for the same. The bill in this case was filed by appellant to enjoin the prosecution of the action of ejectment, and for cancellation of the sheriff's deed. Decree for defendant, from which this appeal is prosecuted. The opinion contains a further statement of the case.

*Hooker & Wilson,* for appellant.

The record shows a scheme on Moore's part to take advantage of the temporary absence of Mrs. Hall and buy in her property at a sacrifice. He had no interest in the judgment, but assumed control of the execution for costs, and bought the property of a neighbor at a grossly inadequate price. His conduct amounted to a fraud, and should be relieved against by a court of equity. *Reynolds* v. *Nye,* Freeman's Ch. R. (Miss.), 462; Freeman on Ex., § 308 *et seq.;* Rorer on Jud. Sales, § 855, and notes.

The principle for which we contend is recognized in *Hopton* v. *Swan,* 50 Miss., 545; *Hall* v. *Moore,* 68 *Ib.,* 527.

*Noel & Tackett,* for appellee.

The appellant knew all about the suit in which the execution for costs issued, and, from the evidence, it is manifest that she knew of the levy upon the property, and that it would be sold. There is no evidence of collusion or fraud in the issuance of the execution and the sale of the property. The fact that it did not sell for a larger sum, was probably the result of fear that the purchaser would get a lawsuit; and then there were questions as to the homestead exemption.

It has never been held that mere inadequacy of price will vitiate a judicial sale. On this point, see Freeman on Ex., § 308, which states that inadequacy alone is not sufficient, unless it is so inordinate as to indicate some mistake or fraud for which the purchaser is responsible, or some misconduct or fraud on the part of the officer conducting the sale. The same authority holds that the mistake or surprise upon which sales are sometimes avoided must be traceable to some wrongful act on the part of the purchaser or the execution creditor.

WOODS, J., delivered the opinion of the court.

The appellee was not entitled to have execution issued to enforce collection of the amount due him by appellant for

witness fees. The fees due him were no part of the taxable costs for which execution might issue. The fees due appellee and the witness, Norval, were for attendance under subpœna issued at appellant's direction. Appellee and Norval were her witnesses, and had simply a valid claim for the amounts so due them against appellant (if the claims had not been barred by the statute of limitation), on which they might have brought suit, just as any other creditor by simple contract. Section 1595, code 1880, in its provision that "the party paying any witness attending on his behalf may file the certificate given by the clerk or commissioner among the papers in the cause, and, if he recover costs in the cause, the amount shall be taxed in the bill of costs," has no application to witnesses of the unsuccessful litigant who have never been paid. The appellant did not recover costs in the suit in which the appellee and Norval were her witnesses. She was unsuccessful in that litigation, and the costs were adjudged against her. Under section 1595, her witnesses could sue for, and recover from her, the amounts specified in the clerk's certificate of their attendance, and such amounts were not embraced in the judgment, as part of the costs in the original suit.

The attempt of appellee, therefore, to use the process of the court to coerce payment of such witness fees was without the semblance of authority in law, and any rights to or interest in the land in controversy thus acquired must fall at the touch of appellant's attack.

But refuge may be sought to be taken by appellee in the uncontroverted fact that he had some agreement with Hoskins, the then sheriff, and, perhaps, with Oltenberg, the clerk, by which he was given control of their costs, for which execution might issue, and that he stood in their room and stead in taking out execution and having it levied and appellant's property sold. Let us look briefly at the facts disclosed by the evidence which give support to the averments of the bill.

The appellant is a woman—a widow—unfamiliar with the

forms of business.  At the conclusion of the  original suit,
judgment was rendered against her that she restore to her
adversary the stock of goods involved in that controversy,
and that, on failure to do so, execution issue against her and
the sureties on her claimant's bond, for four hundred dollars,
the value of said stock of goods, and for costs.  The stock
of goods was restored under the judgment, and the same fully
satisfied, except as to the costs, amounting to nearly sixty
dollars.  No steps were taken to enforce the judgment for
costs from the date of rendition of judgment, 1881, until
1887, when execution was issued, and returned indorsed by
the proper officer, "no property found," etc.  In August,
1889, an *alias* execution was issued and levied upon the lot
in controversy, under appellee's direction, but it was not sold
thereunder.  In September, 1889, another execution was
issued, also under appellee's direction, and likewise levied on
the lot of appellant, and upon another lot, the property of
one Bradford, one of the sureties on the claimant's bond in
the original suit, and against whom judgment had gone, as
such surety, on the determination of that litigation.  Both
of these lots thus levied upon were improved residence lots,
and, for many years prior to the year 1889, had been used
and occupied by appellant and Bradford as homes, and were
worth, appellant's from $600 to $800, and Bradford's from
$400 to $600.  Appellant's house and lot were, at the time of
the levy, rented for $120 per annum, two rooms in the resi-
dence being reserved by appellant for her use, and Bradford's
house and lot were rented for about $75 per annum, or at
that rate.  Appellant and appellee lived in the same town—
Goodman—in Holmes county, and had so lived for many
years.  In 1889 appellant left her home, temporarily, to visit
a daughter living in Greenville, Miss., and was unexpectedly
detained in attendance upon the daughter, because of serious
and protracted illness.  Whilst so absent, the property of
appellant, and that of her surety, Bradford, as already set out,
was levied upon under execution taken out and executed by

appellee's direction, when appellee became the purchaser, bidding $25 for appellant's lot, and $32.50 for Bradford's lot, and took conveyance from the sheriff to himself for both. The appellant had no notice of any purpose to sell her property, and only learned of it after the sale during her temporary absence, which absence the appellee was then aware of. No attempt was made by appellee, or the officer whom he represented, to advise appellant of the peril to which it was designed to subject her home—the only property she had—though appellant and appellee lived in the same town, and her absence was known to him, and she might have been easily and speedily communicated with in Greenville. It is undisputed, too, that on appellant's return to her home, after being advised of its sale, appellee endeavored to ignore and disregard appellant, when she approached him in pursuance of an appointment which they had made to meet and arrange the matter. The statement of the bill that appellant was not aware that there was against her a judgment in the long-buried case in which she was defeated, and that, if she had known her property had been levied upon to satisfy such ancient judgment for costs, or had even known that she was liable for the same, she could and would have paid it, is undenied.

Contenting ourselves with this recital of the material matters shown by the evidence, or not challenged by appellee, we have this case: The levy and sale under the direct order of a person confessedly standing, or attempting to stand, in the place of officers who had a judgment for not more than $36.25, and perhaps for less, of two properties—one worth $600 to $800, for $25; and the other, worth from $400 to $600, for $32.50, an inadequacy of price so great as to shock the average conscience. We have, moreover, an utter absence of any effort to coerce payment under legal process for about eight years, during which time appellant was at her home, and in position to satisfy the officers' costs, if such effort had been made, whereby she was lulled into forgetfulness of the

little judgment for costs, and into false security from attack thereunder. After eight years, on the occasion of the temporary absence of this appellant at her daughter's sick bedside, we find a remarkable quickening of diligence by the appellee in his efforts to secure the officers' costs (for he had no interest himself in the judgment, as we have seen, and is now being regarded by us as the representative of the officers). Executions are twice taken out, in quick succession, in her absence, and levied by direction of appellee, the neighbor of appellant in Goodman, with full knowledge of her absence, upon her property. A sale takes place quickly, and the appellee becomes the purchaser of both lots for less than one-twentieth of their value.

To our minds, the rule declared by this court in *Davis* v. *Bell*, 57 Miss., 320, is fairly applicable to the case at bar. Said George, C. J., in that case: "An officer's right to collect his costs by execution is a shield to protect him, not a sword to oppress or destroy the debtor. If he issues an execution, and under it purchases, either directly or indirectly, property of the defendant at a sacrifice, as was done in this case, he must be held to be a trustee for the defendant, unless he shows that he has given notice, by mail or otherwise, to the defendant, if he knows, or could with reasonable diligence ascertain, his residence. He should, in such a case, warn the defendant of the intended issuance of the execution, and of the threatened levy and sale, and thus give him a fair opportunity of preventing a sacrifice of his property.

"The right of an officer to issue or execute process for his own benefit, and to collect costs due him, must be exercised with the utmost good faith, and with a view only of collecting his costs. It cannot be perverted to the gaining of an unfair advantage to the officer in securing property of the defendant at a great bargain."

The condemnation announced by that decision must fall upon the transaction disclosed in the record before us. The appellee attempts to justify his conduct by showing himself

the representative of the officers in the attempt to collect their costs, in the manner and under the circumstances detailed. Put it on that ground, as we do from his own testimony, and the appellant appears to be entitled to the relief sought.

The appellee is entitled to recover such costs as were properly taxable in the execution under which sale was attempted to be made, and which he paid.

*Reversed and remanded.*